**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **EMILE CHARLES** | **CIVIL ACTION NO. 22-1505** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **CHRIS STINSON** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Plaintiff Emile Charles, a prisoner at Madison Parish Detention Center ("MPDC")

proceeding pro se and in forma pauperis, filed this proceeding on approximately June 6, 2022,

under 42 U.S.C. § 1983.  He names Warden Chris Stinson as defendant.[1]

For reasons that follow, the Court should retain Plaintiff's claim that Warden Chris

Stinson, in his individual capacity, failed to provide medical care.  The Court should dismiss

Plaintiff's remaining claims.

**Background**

Plaintiff, a Muslim, alleges that MPDC is feeding him pork, which "clearly violates" his

First Amendment right to practice his religion.  [doc. # 1, p. 3].  He complained "to the staff,

asking that the pork be replaced[,]" but he was ignored and continued to receive pork.  *Id.*

Plaintiff states that because he receives pork, he does not "feel clean spiritually[.]"  *Id.*  He also

states that because he does not eat the pork, he receives a smaller portion of food than he would

otherwise receive with an alternative product.  [doc. # 5, p. 2].

Plaintiff also claims that he has experienced deliberate indifference to his serious medical

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636 and the standing orders of the Court.

needs. [doc. # 1, p. 4]. He has a cut on his foot and a lump on his rib, and he suffers from constant pain. [doc. # 5, p. 2]. He states that the lump "could be a tumor or cancer." *Id.* He asked to see a physician numerous times but was ignored. *Id.* He has "been complaining about [his] issues constantly[,]" but he was ignored and has not "been able to see a doctor or receive the correct medical care." [doc. # 1, p. 4].

Plaintiff suggests that he wrote to Warden Stinson numerous times requesting medical care, but Stinson never responded or attempted to help. [doc. # 5, pp. 3-4]. Stinson "has been notified" of all of Plaintiff's "matters" and "problems[,]" but Plaintiff has "been ignored[.]" *Id.* at 4. Plaintiff writes: "Warden Chris Stinson never addressed my problem personally or sent his staff to help by any means thereof." *Id.* at 3. To date, Plaintiff is still seeking treatment. *Id.*

Plaintiff claims that Warden Stinson failed to train his staff correctly in solving Plaintiff's "issues." *Id.* at 4. He alleges that deputies are not trained in handling complaints or grievances. *Id.* at 3.

In his initial pleading, Plaintiff tersely claimed that his right to access the courts and pursue a non-frivolous claim was violated. [doc. # 1, p. 4]. In an amended pleading, Plaintiff explains that because he lacked access to a law library in 2013, he missed his "post conviction motion date . . . ." [doc. # 5, p. 3]. He writes: "If given the correct access I could have been proven not guilty or overturned my sentence because there were so many loopholes in my case . . . ." *Id.* He suggests that he continues to lack access to a law library, writing, "I'm here a second time of the same incarceration 2022 and is still having problems to receive the correct access to the courts. [sic]." *Id.*

Plaintiff asks the Court to transfer him to another facility, and he seeks $50,000.00 in compensation and punitive damages. [doc. #s 1, pp. 3, 5; 5, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies

somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a

reasonable expectation that discovery will reveal evidence to support the elements of the claim.

*Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of

the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual

allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the

same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not

satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action

in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148,

152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state

a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint.  *Wilson v. Barrientos*, 926

F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights

complaint as frivolous based upon the complaint and exhibits alone.  *Green v. McKaskle*, 788

F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by

the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Religion

As above, Plaintiff alleges that MPDC is feeding him pork, which "clearly violates" his First Amendment right to practice his religion. [doc. # 1, p. 3]. He complained "to the staff, asking that the pork be replaced[,]" but he was ignored and continued to receive pork. *Id.* Plaintiff states that because he receives pork, he does not "feel clean spiritually[.]" *Id.* Because he does not eat the pork, he receives a smaller portion of food than he would otherwise receive with an alternative product. [doc. # 5, p. 2]. Plaintiff tentatively faults Warden Stinson, writing that he "blames Chris Sinton for all matters . . . ." *Id.* at 4.

For relief, Plaintiff seeks a transfer to another facility, compensatory damages, and punitive damages.

First, this Court lacks authority to transfer Plaintiff. A prisoner has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department.  The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department."  LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss his request for a transfer.

Next, Plaintiff seeks compensation.  Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."  "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury."  *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).  "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'"  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, Plaintiff "brought" this action when he was incarcerated.  [doc. # 1, p. 2].  Further, while Plaintiff states that he receives a smaller portion of food because he does not eat the pork, he does not plausibly allege that he suffered any physical injury—or any other compensable

injury or damage—because of the claimed First Amendment violation.[3]  To the extent he alleges

that Warden Stinson caused him mental, emotional, or de-minimis physical injuries, he may not

recover monetary relief.[4]

Finally, Plaintiff seeks punitive damages.  "[P]unitive damages may be awarded only

when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous

indifference to a person's constitutional rights.  The latter standard requires recklessness in its

subjective form, i.e. a subjective consciousness of a risk of injury or illegality and a criminal

indifference to civil obligations." *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003)

(internal quotation marks and quoted sources omitted).

Here, even construing Plaintiff's allegations liberally and in his favor, he does not allege

any facts indicating that Warden Stinson was 'motivated by evil intent,' demonstrated reckless or

---

[3] The undersigned instructed Plaintiff to "identify the specific injury or harm" for which he seeks monetary relief.  [doc. # 4, p. 2].

[4] *See Woods v. Chapman*, 239 F. App'x 35, 38 (5th Cir. 2007) (holding that an inmate could "not recover for his alleged emotional injuries" on a First Amendment claim because "he has not alleged any physical harm."); *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 605-06 (5th Cir. 2008) (prisoner's claims for compensatory damages against prison officials in their official capacity on claims alleging First Amendment and RLUIPA violations were barred by the PLRA provision prohibiting actions for mental or emotional injury suffered while in custody without a prior showing of physical injury); *Jones v. Valdez*, 2016 WL 11431910, at *5 (N.D. Tex. Apr. 14, 2016), report and recommendation adopted, 2016 WL 2763883 (N.D. Tex. May 13, 2016).

callous indifference, or displayed a criminal indifference to civil obligations.[5, 6]  In fact, Plaintiff appears to primarily fault MPDC—rather than Stinson—alleging, "MPDC is feeding me pork." [doc. # 5, p. 2].  Accordingly, the Court should deny Plaintiff's request for punitive damages.

Because Plaintiff does not seek any cognizable relief, the Court should dismiss Plaintiff's free exercise/First Amendment claim.

**3. Access to Court**

In his initial pleading, Plaintiff baldly claimed that his right to access the courts and pursue a non-frivolous claim was violated.  [doc. # 1, p. 4].  In an amended pleading, Plaintiff explains that because he lacked access to a law library in 2013, he missed his "post conviction motion date . . . ."  [doc. # 5, p. 3].  He writes: "If given the correct access I could have been proven not guilty or overturned my sentence because there were so many loopholes in my case . . . ."  *Id.*  He suggests that he continues to lack access to a law library, writing, "I'm here a second time of the same incarceration 2022 and is still having problems to receive the correct access to the courts. [sic]."  *Id.*

---

[5] The undersigned observes parenthetically that the Fifth Circuit has affirmed the dismissal of a Muslim inmate's claim that he was "fed a meat product that purported to be beef but which actually contained pork[,]" on grounds that the claim, at best, was one of negligence. *McDowell v. Seachrist*, 275 F.3d 1080 (5th Cir. 2001); *see Eason v. Thaler*, 73 F.3d 1322, 1328 n.2 (5th Cir. 1996) (reasoning that a mistake in providing a meal with pork to a Muslim inmate would amount to mere negligence and would not, therefore, amount to a constitutional violation).

[6] *See Johnson v. Texas Bd. of Crim. Just.*, 2008 WL 5069357, at *1 (5th Cir. Dec. 2, 2008) (affirming, where the plaintiff alleged that defendants violated his right to practice his religion by limiting storage space for religious property, the grant of a motion to dismiss a prisoner-plaintiff's request for punitive damages because the plaintiff failed "to allege facts" showing that "defendants' actions, which implemented prison policies, were motivated by evil intent or that the defendants acted with reckless indifference to [the plaintiff's] constitutional rights."); *see also Busick v. Neal*, 380 F. App'x 392, 398 (5th Cir. 2010) (opining, where a prisoner-plaintiff alleged that defendants violated his right to religious freedom by limiting his access to free bibles, that the plaintiff could not recover punitive damages because he did not present evidence that defendants' actions were callous or motivated by evil intent).

Like his claim above concerning his religion, however, Plaintiff does not seek any cognizable relief for this claim. To reiterate, he seeks a transfer, compensation, and punitive damages.

First, as above, this Court lacks authority to transfer Plaintiff. Second, Plaintiff does not allege that he suffered any physical injury—or any other compensable injury or damage—because he lacked access to a law library or because he continues to lack access to a law library. Thus, he may not recover compensation for this claim.

Finally, Plaintiff does not allege any facts indicating that Warden Stinson was 'motivated by evil intent,' demonstrated reckless or callous indifference, or displayed a criminal indifference to civil obligations. In fact, far from describing an evil intent or reckless, callous, or criminal indifference, Plaintiff does not even explain how Stinson was or is involved. In his initial pleading, he alleges only that his right to access the courts was violated. [doc. # 1, p. 4]. In an amended pleading, he alleges that he lacked access to a law library in 2013 and that this year (2022) he still lacks access to the courts; however, he doesn't explain Stinson's alleged involvement. [doc. # 5, pp. 3-4]. Accordingly, the Court should deny Plaintiff's request for punitive damages.

Because Plaintiff does not seek any cognizable relief, the Court should dismiss Plaintiff's access-to-court claim.

**4. Medical Care**

Plaintiff has a cut on his foot and a lump on his rib, and he suffers from constant pain. [doc. # 5, p. 2]. He states that the lump "could be a tumor or cancer." *Id.* He asked to see a physician numerous times but was ignored. *Id.* He has "been complaining about [his] issues constantly[,]" but he was ignored and has not "been able to see a doctor or receive the correct

9

medical care." [doc. # 1, p. 4].

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824

(5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, construing Plaintiff's allegations liberally and in his favor, he raises a plausible claim. While his description of his injuries/symptoms is not a model of clarity, he plausibly describes a serious medical need. He has a cut on his foot and a lump on his rib, and he suffered from—and continues to suffer from—constant pain.

Further, Plaintiff plausibly describes deliberate indifference. He suggests that he wrote to Warden Stinson numerous times requesting medical care, but Stinson never responded or attempted to help. [doc. # 5, pp. 3-4]. Plaintiff states that Stinson "has been notified" of all of Plaintiff's "matters" and "problems[,]" but Plaintiff has "been ignored[.]" *Id.* at 4. He writes: "Warden Chris Stinson never addressed my problem personally or sent his staff to help by any means thereof." *Id.* at 3. Plaintiff continues to seek treatment to date. *Id.* In sum, Plaintiff alleges that Stinson knew of, yet disregarded, a substantial risk of serious harm.

Of import, Plaintiff does not appear to fault Warden Stinson solely for failing to respond to his grievances. If he did, he would not state a plausible claim because a prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015). Plaintiff, rather, alleges that Stinson knew of his serious medical needs because he notified Stinson of his needs in writing using the administrative remedy process/procedure.[7] Further, he plausibly alleges that because Stinson

---

[7] Plaintiff states that he used the "ARP." [doc. # 5, p. 3]. By "ARP," Plaintiff presumably refers to the administrative remedy procedure at MPDC or to a grievance or request he submitted using the administrative remedy procedure at MPDC.

never responded, Stinson ignored his medical needs. [doc. # 5, pp. 3-4]. In *Murrell v. Chandler*, 277 F. App'x 341, 343 (5th Cir. 2008), for example, the Fifth Circuit reasoned that because the plaintiff advised defendants in written grievances that a "no smoking policy was not being enforced . . . and that he was having serious health problems as a result[,]" the plaintiff created a genuine dispute "as to whether the defendants were involved."[8]

At this early stage of the proceeding, the Court should retain this claim against Warden Stinson in his individual capacity.[9]

**5. Failure to Train**

Impliedly seeking relief from Warden Stinson in his official capacity, Plaintiff cursorily

---

[8] *See Baker v. Smith*, 996 F.2d 305 (5th Cir. 1993) ("If Baker's grievances gave Warden Waldron notice that Baker was in danger of attack by other inmates, and Warden Waldron intentionally or recklessly disregarded these warnings, then Baker may prevail on his claims of deliberate indifference. . . . Baker also alleged that he did not receive a response to any of these grievances, prior to being allegedly shot in the eye. Without the opportunity to further develop the record, we do not know of any other specific facts which Baker could have alleged in support of his deliberate indifference claims."); *Black v. Concordia Par. Det. Ctr.*, 607 F. App'x 440, 441 (5th Cir. 2015) ("Black filed administrative complaints and wrote a letter to Goodwin alleging that the prison's smoking policy was not enforced and that his exposure to ETS aggravated his prostate cancer. When he was unsatisfied with the denial of his administrative complaint, Black appealed, and his appeal was denied by Leblanc or Leblanc's designee. Taking Black's allegations as true, he has stated a plausible claim that Goodwin and Leblanc knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.").

[9] Plaintiff states that a nurse failed to treat him on June 10 and 20, 2022. [doc. # 5, p. 2]. Plaintiff does not appear to raise a claim; rather, it seems he is simply describing an ongoing lack of care. He does not name the nurse as a defendant or otherwise seek relief from the nurse. In addition, the alleged omissions in medical care occurred after he filed this lawsuit. In that respect, Plaintiff could not possibly have exhausted his administrative remedies with respect to the lack of care on June 10 and 20, 2022, *before* filing this lawsuit. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The statute clearly requires an inmate bringing a civil rights action to exhaust his available administrative remedies *before* filing suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001).

claims that Stinson failed to train staff correctly in solving Plaintiff's "issues." [doc. # 5, p. 4]. He alleges that deputies are not trained in handling his complaints. *Id.* at 3.

Plaintiff, however, does not specify what specific training Stinson's subordinates lacked. He alleges that "staff" failed to respond to his complaints or grievances, but then he blames Stinson's failure to train without identifying any specific deficiency in training. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective. . . . Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim.").[10] Essentially, Plaintiff claims that Stinson was vicariously liable for his subordinates' inaction. "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).

The Court should dismiss this claim.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that—with the exception of Plaintiff Emile Charles's claim that Warden Chris Stinson, in his individual capacity, failed to provide or arrange medical care—Plaintiff's request for a transfer and Plaintiff's remaining claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for transfer, [doc. # 1], be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by

---

[10] *See Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir.), *cert. denied,* 141 S. Ct. 376 (2020) ("Ratliff's complaint states in conclusory fashion that a 'deficiency in training actually caused Defendants Scudder and Sheffield to violate Plaintiff's constitutional rights.' But, absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6).").

this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

 **Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

 In Chambers, Monroe, Louisiana, this 22nd day of July, 2022.

_____

Kayla Dye McClusky
United States Magistrate Judge

14