UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

EMILE CHARLES #587595                      CIV. ACTION NO. 3:22-01505 SEC P

VERSUS                                     JUDGE TERRY A. DOUGHTY

CHRIS STINSON                              MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT & RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment [doc. #26], filed by Defendant Chris Stinson.  The motion is unopposed.

For reasons set forth below, it is recommended that the motion be GRANTED and that all of Plaintiff's claims be DISMISSED WITH PREJUDICE.

## Background

On June 6, 2022, Plaintiff pro se Emile Charles ("Plaintiff") filed the instant civil rights complaint under 42 U.S.C. § 1983 against Defendant Chris Stinson ("Defendant"), warden of the Madison Parish Correctional Center ("MPCC").  Plaintiff alleges that Defendant violated his Eighth Amendment rights by depriving him of proper medical care.  Complaint [doc. #1, p.4]; Amended Complaint [doc. #5, pp.2-3].

In his petition for relief, Plaintiff alleges that Defendant has shown deliberate indifference to his serious medical needs.  Complaint [doc. #1, p.4].  Specifically, Plaintiff alleges that he suffered from a cut on his foot and a lump on his rib.  Amended Complaint [doc. #5, p.2].  Plaintiff states that his rib condition causes "constant pain" and "could be a tumor or cancer."  *Id.*  In an effort to address his concerns, Plaintiff alleges that he filed administrative relief procedure ("ARP") forms on January 7, 2022 and February 23, 2022.  *See* Complaint

1

Exhibit [doc. #1-2].  Plaintiff also alleges that, between June 10, 2022 and June 20, 2022, he was seen by a Nurse Frost regarding his foot and rib ailments.  Amended Complaint [doc. #5, p.2]. Nurse Frost allegedly "refused to treat [Plaintiff] or even look at . . . the lump [on his rib]."  *Id.*

More generally, Plaintiff alleges that he has "been complaining about [his] issues constantly[,]" but has been ignored and unable "to see a doctor or receive correct medical care." Complaint [doc. #1, p.4].  Plaintiff suggests that he wrote to Defendant "numerous times" requesting medical care, but Defendant has neither responded nor attempted to help.  Amended Complaint [doc. #5, pp.3-4].  Plaintiff also alleges that Defendant "never addressed my problem personally or sent his staff to help by any means thereof."  *Id.* at p.3.  Plaintiff further alleges that Defendant failed to properly train his staff to address Plaintiff's "issues" and handle his grievances.  *Id.* at pp.3-4.

Plaintiff filed the instant action on June 6, 2022, seeking monetary relief for (1) infringement of his First Amendment right to practice his religion,[1] (2) contravention of his Eighth Amendment right to medical care, and (3) violation of his First, Sixth, and Fourteenth Amendment rights to access the courts.  Complaint [doc. #1, pp.3-5].  Plaintiff also requested that the Court transfer him to another facility.  *Id.* at p.5.

On June 22, 2022, the undersigned ordered Plaintiff to amend his complaint to cure deficiencies in his pleadings.  Order to Cure Deficiencies [doc. #4].  An amended complaint was filed on July 1, 2022.  Amended Complaint [doc. #5].

The undersigned commenced a review of Plaintiff's petition pursuant to 28 U.S.C. § 1915A.  On July 22, 2022, it was recommended that Plaintiff's First, Sixth, and Fourteenth Amendment claims, as well as his request for transfer, be dismissed.  Report and

---

[1] Plaintiff alleged that he was fed pork despite his Muslim faith.  Complaint [doc. #1, p.3].

Recommendation [doc. #7].  Judge Doughty adopted the undersigned's recommendations on

August 12, 2022.  Judgment Adopting Report and Recommendation [doc. #8].

On July 11, 2023, Defendant filed a motion for summary judgment.  M/ Summary

Judgment [doc. #26].  In support of that motion, he argues that Plaintiff (1) failed to exhaust his

administrative remedies, barring his claims pursuant to 42 U.S.C. § 1997e(a); (2) did not show

that Defendant knew of a substantial risk of serious harm facing Plaintiff, nor that Defendant

failed to act on such knowledge, barring his Eighth Amendment claim; and (3) is unable to

recover compensatory damages pursuant to 42 U.S.C. § 1997e(e).  Memorandum in Support of

M/Summary Judgment [doc. #29].

Plaintiff has not filed an opposition to Defendant's motion for summary judgment.

Accordingly, this matter is ripe.

## Discussion

### I.    Standard of Review

Summary judgment is appropriate when the evidence before the Court shows "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would

affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986). [2]  A dispute about a material fact is 'genuine' if a reasonable fact

finder could render a verdict for the nonmoving party based on the available evidence.  *Id.* at

---

[2] The materiality inquiry "is independent of and separate from" evidentiary standards.  It is
substantive law that identifies which facts are relevant and which are not.   "Any proof or
evidentiary requirements imposed by the substantive law are not germane to this inquiry, since
materiality is only a criterion for categorizing factual disputes in their relation to the legal
elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those
disputes." *Id.*

248-49. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249.

To properly support a motion for summary judgment, the moving party must identify portions of "the pleadings, depositions, answers to interrogatories, and admissions on file" which demonstrate the absence of a genuine issue of material fact. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). This absence is shown by exhibiting that the record contains no support for the non-moving party's claim. *Id.* To rebut a properly supported motion for summary judgment, the non-moving party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Atkins v. Szymczak*, 710 Fed.Appx. 223, 224 (5th Cir. 2018) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). While courts will "resolve factual controversies in favor of the [non-moving] party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Johnson v. Cooper T. Smith Stevedoring Co., Inc.*, 74 F.4th 268, 275 (5th Cir. 2023) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). If the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Stahl*, 283 F.3d at 263.

When analyzing a motion for summary judgment, "[t]he court need consider only the cited materials, but it may [also] consider other materials in the record." Fed. R. Civ. P. 56(c)(3).[3] Courts "may not make credibility determinations or weigh the evidence," and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013).

---

[3] However, Rule 56 does not require the Court to "'sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

II.      *Defendant's Motion for Summary Judgment*

Plaintiff's sole remaining claim is that Defendant has exhibited deliberate indifference towards Plaintiff's serious medical care needs.  Defendant's argument concerning Plaintiff's compliance with the Prison Litigation Reform Action ("PLRA") is addressed first.  The propriety of Plaintiff's medical care claims under the Eighth Amendment is analyzed afterword.

a.  *Plaintiff's Exhaustion of Administrative Remedies and Compliance with the PLRA*

A threshold inquiry is whether Plaintiff is permitted to bring the instant action.  Under the PLRA, an action under 42 U.S.C. § 1983 may not be brought until all available administrative remedies are exhausted.  42 U.S.C. § 1997e(a).[4]  The administrative review process must be completed "in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself."  *Flores v. Lappin*, 580 Fed.Appx. 248, 249 (5th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  A "strict approach" is taken to the exhaustion requirement whereby "mere 'substantial compliance'" is insufficient.  *Flores*, 580 Fed.Appx. at 249 (citations omitted).  A plaintiff "must exhaust available remedies properly," including complying with agency deadlines "and other critical procedural rules."  *Id.*  Plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  Accordingly, defendants bear the burden of proving that the plaintiff has failed to exhaust available administrative remedies.  *Cantwell v. Sterling*, 788 F.3d 507, 508-09 (5th Cir. 2015) (citing *Jones*, 549 U.S. at 216).

---

[4] The full text of § 1997e(a) is as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

In the instant case, the parties dispute whether Plaintiff has exhausted his administrative remedies.  Specifically, the parties contest whether Plaintiff properly filed ARP forms in reference to his medical complaints.  Plaintiff attached two alleged ARP filings to his Complaint.  Complaint Exhibit [doc. #1-2].  The alleged filing dated January 7, 2022, reads, in part, "[my] 8th Amendment [rights have] been violated due to my lack of receiving medical attention for my serious medical needs and [I] haven't received any help from a doctor . . . ." *Id.* at p.2.  The alleged filing dated February 24, 2022 reads, in part, "I wrote a grievance on January 7, 2022 . . . . I have yet to receive a response to this complaint[. My] 8th amendment [rights] to the U.S. Constitution [have] been deliberately violated due to the lack of medical attention for serious medical needs . . . ." *Id.* at p.1.

To counter this evidence, Defendant presents Plaintiff's Classification and Medical Files. *See* Declaration of Chris Stinson, Exhibit A [doc. #29-6]; Declaration of Chris Stinson, Exhibit B [doc. #29-7].  Neither of these files contains a record of ARP or grievance filings.  Defendant declares that "if an ARP or grievance were filed by [Plaintiff], a copy of [the] same would be found in [the Classification or Medical Files]."  Declaration of Chris Stinson [doc. #29-5, p.2].  Defendant also proffers Plaintiff's signed acknowledgement that he was informed of MPCC's ARP process.[5] Memorandum in Support of M/Summary Judgment, Exhibit 2 [doc. #29-3, p. 7].

What Defendant does **not** provide is critical.  The record does not reflect allegations or evidence of the MPCC grievance process' procedures and policies.  Nor does it reflect specific allegations or evidence showing that Defendant failed to comply with those procedures and

---

[5] The full text of the signed acknowledgement reads: "I have been instructed & given information on the process for utilizing the Administrative Remedy Procedure (ARP) & Grievance Process[] (Additional information in Handbook)[.]"  Defendant's Exhibit 2, at MCC CF7 [doc. #29-3, p. 7].

policies.  Plaintiff has no obligation to specially demonstrate exhaustion, but Defendant must meet his burden in showing that administrative remedies remain available.  To show that Plaintiff did not comply with the prison grievance process, Defendant must provide something to illustrate what that process requires.  He has not done so.

Defendant has not met his burden in proving that Plaintiff failed to exhaust administrative remedies.  Furthermore, both parties have submitted contradictory evidence regarding Plaintiff's compliance with the MPCC's grievance process, so a genuine issue of material fact exists as to Defendant's PLRA argument.[6]  Accordingly, it is improper to grant Defendant's motion for summary judgment to the extent it is based upon Plaintiff's non-compliance with 42 U.S.C. § 1997e(a).

   *b.  Plaintiff's Eighth Amendment Medical Care Claim*

Having survived Defendant's PLRA challenge, Plaintiff's claim must now be analyzed under the standards of the Eight Amendment.

While an inmate has no constitutional right to the best medical treatment or the treatment that he prefers,[7] the Supreme Court has held that the Eighth Amendment requires that "inmates receive adequate . . . medical care." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To prevail on

---

[6] The undersigned does not draw any conclusions as to whether either or both parties' evidence meets the relevant evidentiary standards.  It should be reiterated that, in conducting the instant analysis, all ambiguities and permissible inferences are properly resolved in favor of the non-moving party.  *Total E & P USA Inc.*, 719 F.3d at 434 ("In determining whether a case presents triable issues of fact, [the court] may not make credibility determinations or weigh the evidence and we must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party.").

[7] *See e.g.*, *Baughman v. Garcia*, 254 F. Supp. 3d 848, 877-88 (S.D. Tex. May 26, 2017) (noting that it is "well established" that an inmate has no right to the treatment he prefers or the best treatment available).

a medical care claim, plaintiffs must establish that deprivation of appropriate medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is "an extremely high standard to meet." *Zaunbrecher v. Gaudin*, 641 Fed.Appx. 340, 344 (5th Cir. 2016) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). An official is deliberately indifferent to a plaintiff's need if the official (a) knows that the inmate faces "a substantial risk of serious harm" and (b) "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. To 'know' of the risk, the official must (a) "be aware of facts from which the inference could be drawn" that such a risk exists, and (b) "draw the inference" that said risk does in fact exist. *Id.* at 837. Serious harm isn't just any harm: The medical need must be "so apparent that even laymen would recognize that care is required." *Rogers v. Jarrett*, 63 F.4th 971, 976 (5th Cir. 2023) (quoting *Gobert*, 463 F.3d at 345 n.12).

A showing of deliberate indifference "requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017) (quoting *Gobert*, 463 F.3d at 346). "Mere 'negligence' does not constitute deliberate indifference, 'nor does a prisoner's disagreement with his medical treatment, absent extraordinary circumstances.'" *Id.* Allegations of unsuccessful medical treatment, medical malpractice, or mistaken judgment are similarly insufficient to evidence deliberate indifference to serious medical needs. *Young v. McCain*, 760 F. App'x 251, 256 (5th Cir. 2019).

While the undersigned sympathizes with Plaintiff's pain, there is no evidence that he was (or is) at risk of significant harm sufficient to clearly require medical care. Instead, the record

illustrates that Plaintiff testified to suffering a wound to his foot for which he received attention and which eventually healed.  Memorandum in Support of M/Summary Judgment, Exhibit 1 [doc. #29-2, p. 6].  The record further indicates that an MPCC nurse examined Plaintiff and determined the lump on his abdomen was a broken or calloused rib.  *Id.* at p. 8.  Based on this evidence, Plaintiff was not at risk of severe harm.

Even if Plaintiff was at risk of severe harm, the record does not show that Defendant could have knowledge of such a risk.  Plaintiff alleges various communications to demonstrate Defendant's reputed knowledge.  As discussed *supra*, Plaintiff has provided what he alleges to be two ARP filings notifying MPCC staff of his need for medical attention.  Complaint Exhibit [doc. #1-2].  These filings are not specifically directed towards Defendant, nor any other specific member of MPCC staff.[8]  Plaintiff also testified that he verbally alerted Defendant to the knot on his ribs during a shakedown in the MPCC facility.  Memorandum in Support of M/Summary Judgment, Exhibit 1 [doc. #29-2, p. 6].  The record does not evidence an approximate date of this conversation's occurrence.

To counter Plaintiff's arguments, Defendant avers that MPCC has no record of any ARP filings in Plaintiff's Classification or Medical Files.  *See* Declaration of Chris Stinson, Exhibit A [doc. #29-6]; Declaration of Chris Stinson, Exhibit B [doc. #29-7].  Defendant also declares that he does not recall receiving any ARP or grievance filings from Plaintiff concerning his medical care at MPCC.  Declaration of Chris Stinson [doc. #29-5, p.2].  Defendant additionally declares

---

[8] Plaintiff testified at his deposition that these two alleged ARP filings were the "numerous" written communications sent to Defendant described in his Amended Complaint.  Memorandum in Support of M/Summary Judgment, Exhibit 1 [doc. #29-2, pp. 10-11]; *see* Amended Complaint [doc. #5, p.3] ("I wrote [Defendant] numerous times about these matters . . . .").

that he does not recall speaking to Plaintiff about any medical issues and if he had, he would have directed Plaintiff to follow the appropriate medical care and grievance procedures.  *Id.*

There is no indication that the sole Defendant was made aware of Plaintiff's purported ARP filings.  Nor is there clear evidence that Plaintiff and Defendant had any sort of meaningful conversation about Plaintiff's medical issues.  As it stands, the record does not support the conclusion that Defendant had knowledge sufficient to infer Plaintiff was at substantial risk of serious harm, nor that Defendant did in fact make that inference.  In the context of an Eighth Amendment medical care claim, the evidence put forth by Plaintiff is insufficiently probative to create a genuine dispute of material fact with regards to Defendant's knowledge that Plaintiff faced a substantial risk of serious harm.

Assuming, *arguendo*, that Plaintiff was at substantial risk of serious harm and Defendant was aware of that risk, the record does not support a finding that Defendant exhibited disregard of said risk.  Plaintiff has provided no evidence that he was refused treatment, nor that Defendant was involved in any such refusal.[9]  Nor is there evidence that Defendant was involved in the intentional mistreatment of Plaintiff.  Nor does the record indicate that Defendant received any of Plaintiff's alleged ARP filings and then deliberately ignored them.  Even if Plaintiff mentioned his "lump" in passing, there is no indication that Defendant wantonly disregarded Plaintiff's medical needs.  Accordingly, the record is insufficient to show that Defendant disregarded a substantial risk of serious medical harm faced by Plaintiff.

---

[9] In fact, the record indicates that Plaintiff himself refused to receive prescription medication twenty-five times between August 21 and September 16, 2022.  Memorandum in Support of M/Summary Judgment [doc. #29, p.10]; *see also* Memorandum in Support of M/Summary Judgment, Exhibit 3 [doc. #29-4].

While Plaintiff "personally blame[s]" Defendant for his alleged injuries, the Amended Complaint appears to put forth a secondary theory of supervisory liability.  Allegations that an official is responsible for the actions of subordinate officers or co-employees under a theory of vicarious liability are, standing alone, insufficient to state a claim under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)) ("Because vicarious liability is inapplicable to . . . § 1983 suits. . ., the plaintiff in [such an action] must plead that each Government-official defendant, through his own individual actions, has violated the Constitution.").  For a supervisory official to be liable under § 1983, the official "must be either [(a)] personally involved in the acts causing the deprivation of a person's constitutional rights, or [(b)] there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed."  *Ducksworth v. Macmurdo*, 809 Fed.Appx. 249, 249-50 (5th Cir. 2020) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

Plaintiff alleges that he was seen by Nurse Frost between June 10 and June 20, 2022. Amended Complaint [doc. #5, p.2].  The visit was in reference to the cut on his foot, the lump on his rib, and his constant pain.  *Id.*  Plaintiff alleges that Nurse Frost "refused to treat me or even look at my problem of the lump.  *Id.*  He offers no additional evidence of this interaction with Nurse Frost.  Yet Plaintiff's medical file does not evidence any visit with a Nurse Frost in June 2022.  The file *does* refer to a May 12, 2022 visit with a nurse concerning Plaintiff's foot injury. Memorandum in Support of M/Summary Judgment, Exhibit 3 [doc. #29-4, p.21].  Plaintiff also alleges that he asked to "see the doctor on numerous times but was ignored, and never received an answer back from my ARP that I filed because of the lack of medical care and treatment." Amended Complaint [doc. #5, p.2].  There is no additional evidence supporting the allegation that Plaintiff's requests were ignored.  The file does, however, refer to an August 20, 2022 visit for

psychiatric assistance.  Memorandum in Support of M/Summary Judgment, Exhibit 3 [doc. #29-4, p. 42].  Plaintiff further alleges that he has "complained to [Defendant's deputies] that [are] supposed to be properly trained in these issues to handle my complaint but I was also ignored by [the] officers."  Amended Complaint [doc. #5, p.3].  There is no evidence documenting the alleged interactions with Defendant's deputies.

As a threshold matter, this body of evidence does not illustrate any deprivation of Plaintiff's rights.  If it did, it does not show that Defendant had any involvement in the acts that allegedly led to such deprivation.  Nor does it establish a causal connection between Defendant's actions and any deprivation of Plaintiff's rights.  In the case of Plaintiff's interactions with medical staff, Defendant is not involved in medical decisions, nor does he receive related requests or filings.  *See* Declaration of Chris Stinson [doc. #29-5, p.1].  As to the alleged interactions with deputies, there is insufficient evidence to support a finding that Plaintiff's constitutional rights were deprived in relation to those interactions, let alone a finding that Defendant's actions were causally connected to any such deprivation.

For the foregoing reasons, the record unambiguously demonstrates that there are no issues of material fact concerning Plaintiff's claim. [10]  Accordingly, it is RECOMMENDED that Defendant's motion for summary judgment be granted, and Plaintiff's claim against Defendant be dismissed with prejudice.

---

[10] To survive summary judgment, Plaintiff would need to show via sufficient evidence that (a) he was at substantial risk of serious harm, (b) a specific government official knew of that risk, and (c) that official was deliberately indifferent to the risk.  He has not done so here.

**Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant Chris Stinson's motion for summary judgment [doc. #26], be **GRANTED** and all claims against him be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 12th day of September, 2023.

_____

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE